FILED

2004 Dec-09  PM 04:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| TEIA TWILLEY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CASE NO. CV03-HGD-1729-S |
| | ) | |
| BURLINGTON NORTHERN & | ) | |
| SANTA FE RAILWAY CO., INC., | ) | |
| | ) | |
| Defendant | ) | |

## **MEMORANDUM OPINION**

The above-entitled civil action is before the court on the motion for summary judgment filed by defendant, Burlington Northern & Santa Fe Railroad Co., Inc. (BNSF). (Doc. #13).  This matter is before the undersigned United States Magistrate Judge upon the consent of both parties in accordance with the provisions of 28 U.S.C. § 636(c) and Rule 73, Fed.R.Civ.P.  Plaintiff, Teia Twilley, claims that she was a victim of sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*, when BNSF failed to hire her as a conductor-trainee.

### FACTUAL BACKGROUND

Plaintiff sought employment with defendant in 2001.  The position for which she applied required the applicant to:

1. Have a high school diploma or a GED certificate;

2.      Make up trains in the yard and move trains from one
        location to another;

3.      Observe, interpret and relay hand, lantern, and other
        signals affecting the movement of trains;

4.      Work predominately outside, often in very hot or cold
        environments;

5.      Travel and remain away from home for extended periods
        of time;

6.      Be on-call 24 hours a day, 365 days a year, and,

7.      Be able to report for duty within 90 minutes upon receipt
        of a call.

(Pl. Exh. C, Letter to Alabama Employment Security from BNSF dated April 30, 2001; Def.

Exh. B, Freshour Decl., at ¶ 2).  There were no other minimum qualifications for this

position.  (Pl. Exh. B, Freshour Depo., at 34).

Twilley and 30 other individuals applied for the position.  Plaintiff submitted an

application for employment with BNSF and was selected for testing and an interview for the

position.  Her resume reflects that her prior job experience consisted of employment at

Guthrie's Restaurant from November 1998 to December 1999 and at Scott's Hallmark Gift

Shop from November 2000 to February 2001.  (Pl. Exh. D, Twilley Application for

Employment with BNSF).

Plaintiff was interviewed by Dane Freshour, Human Resources Director for BNSF.

Freshour also interviewed 12 other candidates. Jamie Holt, a Human Resources Manager for

BNSF, interviewed the remaining candidates.  (Def. Exh. B, Freshour Decl., at ¶ 3).

2

Michael R. Rohdy, local chairman for the United Transportation Union, was also present during the interviews. (*Id.*; Pl. Exh. A, Freshour Depo., at 10). The purpose of the interviews was to evaluate each candidate's ability in the following areas:

1.   Ability to perform in BNSF's work environment;
2.   Prior train service-related training and experience;
3.   Work approach and style;
4.   Working with others: and,
5.   Oral communication.

(Def. Exh. B, Freshour Decl., at ¶ 4).

Each candidate was rated in areas two through five. (*Id.* at ¶ 5). A rating of three or less is "less than acceptable"; a rating of four, five, or six is "acceptable"; and a rating of seven, eight or nine is considered "outstanding." (*Id.*). The results were tallied, and BNSF would not consider a candidate whose total was less than 16. The highest rating an applicant can receive is a 36. (*Id.*).

In addition to considering an applicant's oral interview score, BNSF also considered other factors such as the length of a candidate's prior employment history, gaps in prior employment history, and the types of jobs a candidate has held. (*Id.* at ¶ 6). BNSF also looked for experience that required qualities that BNSF considers important, such as technical experience, an ability to work safely in a heavy industry environment, work in very hot or very cold environments, working on-call 24 hours a day, traveling away from home for extended periods of time, and work safety. (Pl. Exh. A, Freshour Depo., at 40, 43, 45-46, 49, 53, 60-61, 63, 79; Def. Exh. B, Freshour Decl., at ¶ 7). Work safety and formalized

3

training for safety in a heavy industry type job were BNSF's highest priorities.  (Pl. Exh. A, Freshour Depo., at 19; Def. Exh. B, Freshour Decl., at ¶ 7).

According to the decision-maker in this case, Dane Freshour, plaintiff exhibited none of the qualities required for the position.  (Def. Exh. B, Freshour Decl., at ¶ 8).  Freshour considered  the fact that, at the time she applied for a position with BNSF, Twilley had only 13 months of work experience, working for a fast-food restaurant and a gift shop.  According to Freshour, plaintiff's work history did not reflect any ability to work in BNSF's work environment.  (*Id.*).

Freshour was the sole decision-maker.  Michael Rohdy had no input into the selection process.  (*Id.*  at ¶ 10).  Freshour selected Robert W. Atkins, Carter Clements, James Green, Steven Humphries, and Darrell Polly to fill the conductor-trainee positions because they all possessed technical experience, heavy industry experience and/or safety training.  (*Id.* at ¶ 11).

## SUMMARY JUDGMENT STANDARD

This matter is considered by the court pursuant to the provisions of Rule 56, Fed. R. Civ. P. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).  Thus, summary judgment is

4

appropriate where the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 332, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law governing the action determines whether an element is essential. *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleading, depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *see Brown v. Crawford*, 906 F.2d 667, 669 (11th Cir. 1990), *cert. denied*, 500 U.S. 933, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991).

This circuit clearly holds that summary judgment should be entered when the moving party has sustained its burden of showing the absence of a genuine issue of material fact when all the evidence is viewed in the light most favorable to the non-moving party, *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir. 1983); *see also, Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512. The evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. *Id*. at 255, 106 S.Ct. at

2514, *citing Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1608-09, 26 L.Ed.2d 142 (1970).  It is, therefore, under this standard that the court must determine whether the plaintiff can meet her burden of coming forward with sufficient evidence as to each material element of her claim sufficient to permit a reasonable jury to find in her favor.

## DISCUSSION

Whether an employer intentionally discriminated against an employee or potential employee is a question of fact, which may be proved either through direct or circumstantial evidence.  *See Green v. Sch. Bd. of Hillsborough County*, 25 F.3d 974, 977-78 (11th Cir. 1994).  "Direct evidence of discrimination is evidence, that, 'if believed, proves [the] existence of [a] fact in issue without inference or presumption.'" *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999) (quoting *Burrell v. Bd. of Trustees of Ga. Military College*, 125 F.3d 1390, 1393 (11th Cir. 1997)) (alterations in original).

Absent such evidence, a plaintiff may prove her case through circumstantial evidence, using the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and subsequent cases.  Under this framework, the plaintiff initially must establish a *prima facie* case of discrimination.  *See id.* at 802, 93 S.Ct. at 1824.  By establishing a *prima facie* case, the plaintiff creates a rebuttable presumption that the employer unlawfully discriminated against her.  *See United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 714, 103 S.Ct. 1478, 1481,

6

75 L.Ed.2d 403 (1983).  The burden then shifts to the employer to rebut this presumption by producing evidence that its action was taken for some legitimate, non-discriminatory reason. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254-55, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981).  Should the employer meet its burden of production, the presumption of discrimination is rebutted, and the inquiry "proceeds to a new level of specificity" in which the plaintiff must show that the proffered reason really is a pretext for unlawful discrimination. *See id.* at 255-56, 101 S.Ct. at 1095-96.  Although the intermediate burdens of production shift back and forth, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee remains at all times with the plaintiff.  *See id.* at 253, 101 S.Ct. at 1093; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000).

*Prima Facie* Case

Plaintiff has attempted to demonstrate discrimination by presenting circumstantial evidence sufficient to establish a *prima facie* case of discrimination.  In a traditional failure-to-hire case, the plaintiff establishes a *prima facie* case by demonstrating that:  (1) she was a member of a protected class; (2) she applied and was qualified for a position for which the employer was accepting applications; (3) despite her qualifications, she was not hired; and (4) the position remained open or was filled by another person outside of her protected class. *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1273 (11th Cir. 2002).

There is no dispute that plaintiff is a member of a protected class, female.  Although defendant asserts that she was not qualified for the conductor-trainee position, the evidence establishes otherwise.  There is no evidence that plaintiff could not meet the job requirements as set out in defendant's job description.  Likewise, she scored 16 on the oral examination, which defendant acknowledges was a passing score.  (Def. Exh. B, Freshour Decl., at ¶ 5).  Therefore, plaintiff was at least minimally qualified for the position she sought.[1]  That is all that is required.  *Wright v. Southland Corp.,* 187 F.3d 1287, 1301 (11th Cir. 1999).  Additionally, plaintiff was not hired and all the positions were filled with persons outside the protected class.  Therefore, she has established a *prima facie* case of discrimination based upon her sex.

Articulated Non-Discriminatory Reason

Once the plaintiff has shown a *prima facie* case and, thereby, has raised the presumption of discrimination, the burden of production shifts to the employer to proffer a

---

[1] Defendant asserts that plaintiff was not qualified because the conductor position required the applicant to have prior train service-related training and experience.  This is not so.  The qualifications set out by defendant for this job were:

1.  Ability to perform in BNSF's work environment;
2.  Prior train service-related training and experience;
3.  Work approach and style;
4.  Working with others; and,
5.  Oral communication.

(Def. Exh. B, Freshour Decl., at ¶ 4).  However, the testimony reflects that train service-related experience was considered a positive quality, but it was not a requirement necessary to possess before BNSF would interview a candidate for this position.

legitimate and nondiscriminatory reason for its actions. *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir. 1997). The employer's burden is so light as to be virtually weightless, meaning that the employer need merely put forth a legitimate reason for its actions and need not convince the court that the reason offered was the true motivating force. *See Tipton v. Canadian Imperial Bank of Commerce,* 872 F.2d 1491, 1495 (11th Cir. 1989). If the employer satisfies that burden by articulating a nondiscriminatory reason, then the presumption of discrimination falls and the burden of production again shifts to the plaintiff to offer evidence sufficient for a reasonable jury to conclude that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination. Although the *prima facie* case is irrelevant once the employer has offered a legitimate reason for its actions, the evidence of pretext may include the same evidence offered to establish the *prima facie* case. *See Combs,* 106 F.3d at 1528. Despite this shifting of the burden of production between the plaintiff and the defendant under the *McDonnell Douglas* and *Burdine* framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. Given that the ultimate burden of persuasion always lies with the employee, a plaintiff may prevail on an employment discrimination claim and may also defeat a summary judgement either by proving that intentional discrimination did indeed motivate the defendant or by producing sufficient evidence to allow a rational trier of fact to disbelieve the employer's proffered legitimate

reasons, thus permitting but not compelling the trier of fact to make a finding of illegal discrimination. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Combs*, 106 F.3d at 1529-38 (interpreting *Hicks* and post-*Hicks* case law); *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 920-21 (11th Cir. 1993).

Defendant has asserted that plaintiff was not hired for the conductor-trainee position because the decision-maker, Freshour, did not believe that she was among the best-qualified persons for the positions open. Freshour testified that he selected Atkins, Polly, Clements, Green, and Humphries because they all possessed technical experience, heavy industry experience and/or safety training.

The application and interview notes of Robert Atkins reflect that he was employed for almost eight years at a cold storage warehouse as one of its maintenance personnel. He is a certified welder and worked maintaining refrigeration equipment. He also served on a company safety committee. (Def. Exh. D at Exh. 4, Robert Atkins Employment Application and Interview Notes).

The application and interview notes of Darrell Polly reflect that from 1990 to 1994 he was employed by the U.S. Army in the area of missile maintenance. From 1994 to 2000 he worked as a mobile home builder and, at the time of his application, was completing college courses, taking electrical and heating/cooling studies for which he apparently received A.A. degrees. (Def. Exh. D at Exh. 8, Darrell Polly Employment Application and Interview Notes).

The application and interview notes of Carter Clements reflect that he was currently employed by, but on furlough with, the Norfolk Southern Railroad where he was an engineer trainee/conductor.  He possessed a Norfolk Southern locomotive engineer certification and was already a qualified conductor.  (Def. Exh. D at Exh. 9, Carter Clements Employment Application and Interview Notes).

The application and interview notes of James Green reflect that he holds a junior college degree in general electricity.  He was employed by a construction company from 1985 to 1987.  From 1987 until 1998 he was employed by Goldkist Farm Systems.  From 1998 to the time of his application with BNSF he was employed by Southern States Farm Systems.  He was employed as a serviceman by both companies, working with the electrical systems and plumbing.  (Def. Exh. D at Exh. 10, James Green Employment Application and Interview Notes).

The application and interview notes of Steven Humphries reflect that he worked from 1972 to 1994 at a warehouse as a dockman and department manager.  At the time of his application, he was employed by a construction company as a carpenter.  The work in the warehouse required that he be "very safety conscious."  The interview notes also reflect that Humphries also stated that he could run heavy equipment.  (Def. Exh. D at Exh. 11, Steven Humphries Employment Application and Interview Notes).

Pretext

As evidence of pretext, plaintiff asserts that only one of the other applicants had prior experience working for a railroad and that the others were apparently judged on whether their previous employment provided them with "transferable skills."  Plaintiff states that, although she has not been a paid employee in an environment which required these and similar skills, she did have experience which provided transferable skills similar to the experiences of the male comparators; that is, she had worked for years on her aunt's farm baling hay, doing other agricultural work, and driving a tractor.  (Pl. Exh. A, Freshour Depo., at 76).  Plaintiff concludes that Freshour "apparently discounted [plaintiff's] transferrable skills entirely during the interview" because the interview notes reflect that her employment consisted of "dead end jobs as cashiers."  (Doc. #19, Plaintiff's Brief in Opposition to Summary Judgment, at 7; Def. Exh. D at Exh. 3,  Teia Twilley Employment Application and Interview Notes).

Plaintiff also notes that, of the men hired as conductor-trainees, at least three of them had the same score as she did in the "prior train-related experience" category, and two of these had an overall score of 16 as did plaintiff.  However, of those interviewed by Freshour, the candidates scored as follows:

|  | Train-related Experience Score | Total Score |
| --- | --- | --- |
| 1.  Teia Twilley | 3 | 16 |
| 2.  Robert W. Atkins | 4 | 16 |

| | | |
|---|---|---|
| 3.  Steven Humphries | 5 | 17 |
| 4.  James Green | 4 | 18 |
| 5.  Darrell Polly | 5 | 18 |
| 6.  Carter Clements | 8 | 24 |

(See Pl. Exh. D at Exhs. 3, 4, 8, 9, 10 and 11).

Plaintiff must show that there were employees, not within her protected class, who were similarly situated in all relevant respects, but who were treated more favorably.  *See Walker v. Mortham*, 158 F.3d 1177, 1193 (11th Cir. 1998); *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997).  In determining whether employees were similarly situated and more favorably treated, this Court must consider whether the employees were treated in the same way as plaintiff.  The adequacy of the comparators is crucial.  *Marshall v. Western Grain Co., Inc.*, 838 F.2d 1165, 1168 (11th Cir. 1988).  "To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that [she] and the employees are similarly situated in all relevant respects."  *Holifield*, 115 F.3d at 1561.

None of the employees referenced by plaintiff as ones hired by BNSF who rated the same as her in the "prior train service-related" category (James Hill, Jackie Carver, and Kenny Roberts) are proper comparators because Freshour did not interview them or have any input in the decision to hire them.  (Pl. Exh. A, Freshour Depo., at 59, 66-67).

Although plaintiff has attempted with this argument to demonstrate some basis from which an inference of pretext could be drawn, plaintiff's attack is essentially on the wisdom,

13

rather than any improper sex-based motivation, underlying defendant's actions.  Title VII, though, does not mandate that employers make smart or even fair choices in their personnel decisions.  "The employer may [make a decision regarding] an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."  *See Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir. 1984).  Only where the merits of the employer's choice and the proffered reasons are so utterly dubious that no remotely reasonable employer would make the same selection in the absence of illegal considerations, will courts begin to question the defendant's poor business judgment.  *See Combs*, 106 F.3d at 1543.

In *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000), the Eleventh Circuit clarified the evidentiary burden a plaintiff must meet in order to prove pretext with regard to qualifications.  In a failure-to-promote case, a plaintiff must show that he or she was *substantially* more qualified than the person promoted.  *Id.* at 1254.  The Court in *Lee* cited as an example *Deines v. Texas Dep't of Protective and Regulatory Servs.*, 164 F.3d 277, 280 (5th Cir. 1999), in which the Fifth Circuit affirmed the district court's instruction to the jury, stating that "disparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as to virtually jump off the page and slap you in the face."  That court explained the phrase

> "jump off the page and slap [you] in the face" . . . should be understood to mean that disparities in qualifications must be of such weight and significance that no reasonable person, in the

> exercise of impartial judgment, could have chosen the candidate
> selected over the plaintiff for the job in question.

*Id.* at 280-81.  Federal courts

> do not sit as a super-personnel department that reexamines an
> entity's business decisions.  No matter how medieval a firm's
> practices, no matter how high handed its decisional process, no
> matter how mistaken the firm's managers, the ADEA does not
> interfere.  Rather, our inquiry is limited to whether the employer
> gave an honest explanation of its behavior.

*Elrod v. Sears, Roebuck, & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (quoting *Mechnig v.*

*Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir. 1988) (citations omitted).

The obvious fact is that Freshour considered experience at a regular job involving

heavy equipment and daily safety concerns superior to plaintiff's experience occasionally

helping out on a farm and driving a tractor.  The proffered reason given by BNSF clearly

meets the test of being one that might motivate a reasonable employer.  Plaintiff has failed

to meet her evidentiary burden in order to prove pretext, or even to create a genuine issue of

material fact as to pretext, because she has not shown that she was substantially more

qualified than others selected by Freshour with regard to the qualities BNSF considered most

important.  Thus, plaintiff has not demonstrated that BNSF's legitimate, non-discriminatory

reasons for not hiring her were pretextual

## CONCLUSION

Based on the foregoing, defendant's motion for summary judgment is due to be granted. A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 9th day of December, 2004.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE